**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **JOSHUA CHRONICLES** | * | **CIVIL ACTION NO. 25-2211** |
| | * | |
| **VERSUS** | * | **JUDGE WILLIAM J. CRAIN** |
| | * | |
| **LOYOLA UNIVERSITY NEW ORLEANS** | * * | **MAGISTRATE JUDGE MICHAEL B. NORTH** |
| * * * * * * | * | * * * * * * |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**<u>MOTION TO ENFORCE SETTLEMENT AGREEMENT</u>**

Defendant Loyola University New Orleans ("Loyola") moves this Court to enforce a binding settlement reached by the parties that resolved every claim in this action. On June 29, 2026, after a telephone settlement conference before Magistrate Judge Michael North at which all parties appeared with counsel, Plaintiff Joshua Chronicles ("Plaintiff") and Loyola agreed to settle this case for a $15,000.00 payment plus a set of agreed non-monetary terms. Plaintiff's own counsel confirmed through correspondence copied to the Court — that we have a deal at $15,000 plus the non-monetary terms. The material terms were then recited into the record in open court on July 1, 2026, and the Court retained jurisdiction to enforce the agreement.

Having secured the benefit of his bargain, Plaintiff now refuses to sign the written agreement memorializing what was placed on the record and instead seeks to reopen this matter to attack the settlement's enforceability. A federal district court has the inherent power to summarily enforce a settlement reached in a case pending before it, and this Court expressly retained jurisdiction to do so. Under both Fifth Circuit law and Louisiana Civil Code articles 3071 and 3072, a settlement recited in open court is fully enforceable notwithstanding a party's later refusal to sign the formal writing. Loyola therefore respectfully requests that the Court enforce the settlement and compel Plaintiff to sign the settlement agreement attached hereto as **Exhibit 1**.

# I. FACTUAL BACKGROUND

## A. The underlying litigation.

Plaintiff filed this lawsuit in October 2025 against Loyola. As amended, the Complaint alleges that, while Plaintiff was a Loyola law student, he was subjected to racial harassment, sexual harassment, and threats to his physical safety, and that Loyola failed to accommodate his disabilities; Plaintiff asserts claims for denial of due process, denial of equal protection, and violations of Title IX, the Civil Rights Act, and the Americans with Disabilities Act. The suit was filed one day after Plaintiff received from Loyola an Administrative Hearing Outcome finding him responsible for multiple conduct violations, including abusive conduct, disruptive conduct, and failure to comply with administrative instructions. Loyola filed two motions under F.R.C.P. Rule 12, which are still pending. (R. Doc. 52 and R. Doc. 56).

## B. The June 29, 2026 settlement conference and agreement.

On June 29, 2026, Magistrate Judge Michael North conducted a telephone settlement conference at which both parties appeared with counsel, and a settlement was reached that day. That afternoon, Plaintiff's court-appointed counsel, William Most, emailed Loyola's counsel, Julie Livaudais, setting out the agreed non-monetary terms: Loyola would remove the suspension notation from Plaintiff's transcript and permanently seal his conduct file; Plaintiff would withdraw from the University, agree not to re-apply, comply with the campus ban, have no contact with Loyola staff, and dismiss the case; Loyola would not initiate contact with third parties about Plaintiff but could respond truthfully if contacted; and Plaintiff would not disparage the University or its staff, except that he could truthfully respond, under his own name, to questions from other schools, state bars, and character & fitness examiners. Loyola's counsel replied the same day that the terms "[l]ook[ed] accurate." *See* June 29, 2026 emails between counsel attached as **Exhibit 2**,

*in globo*.

**C. Confirmation of the deal and notice to the Court.**

Plaintiff's counsel then looped Magistrate Judge North into the correspondence so that the Court was aware of the parties' joint understanding of the terms. By email of June 29, 2026, Plaintiff's counsel stated: "Mr. Chronicles confirmed that we have a deal at $15,000 plus the non-monetary terms below," and offered to read the terms of the settlement on the record. *See* **Exhibit 2.** On June 30, 2026, the Court advised all counsel that the settlement would be placed on the record on Wednesday, July 1, 2026, at 11:00 a.m. in courtroom B-407. *See* June 30, 2026 emails between counsel and the Court, **Exhibit 3**, *in globo.* On June 30, 2026, Loyola's counsel then circulated the terms to be placed on the record, restating the non-monetary terms and confirming that Loyola agrees to pay the sum of $15,000.00 (no withholdings) to Mr. Chronicles. *See id.*

**D. The terms were recited in open court on July 1, 2026.**

On July 1, 2026, the terms of the settlement were memorialized on the record in open court. *See* 7/1/26 Transcript, **Exhibit 4**. The Court's Minute Entry (R. Doc. 76) states that "[a] settlement conference was conducted on June 29, 2026 …. On this date, the material terms of the settlement agreement were memorialized on the record" and Magistrate Judge North made clear that the Court was retaining jurisdiction to ensure the parties signed any written agreement arising from the settlement. On July 2, 2026, the Court signed an Order of Dismissal (R. Doc. 77) noting that it was retaining jurisdiction for all purposes, and stating that "the captioned matter is dismissed, without prejudice, subject to reopening for good cause to enforce settlement if not perfected within sixty (60) days." R. Doc. 77.

**E. Plaintiff's refusal to perform.**

On July 21, 2026, Loyola's counsel sent Plaintiff's counsel a draft written settlement agreement for review. On July 27, 2026, Plaintiff's counsel returned a redlined draft with some proposed changes, and plaintiff's counsel also forwarded a clean copy of the same document, signed by the plaintiff, to expedite things in the event that all proposed redlined changes were acceptable to Loyola. *See* 7/27/26 email from Willam Most to Julie Livaudais, with attached redlined draft and signed daft, **Exhibit 5**, *in globo*.

Ms. Livaudais responded on August 7, 2026 stating that only one of the proposed revisions from plaintiff was not acceptable to Loyola because it did not comport with the agreed upon settlement terms. The objectionable, proposed revision found in Section 4.0 reads:

> Notwithstanding the confidentiality provision below, Plaintiff may truthfully disclose to bar examiners, law schools, and character and fitness examiners that the matter was resolved through this Agreement and that the transcript notation was removed, without disclosing the settlement amount or any other specific term of this Agreement.

Specifically, the problem with the proposed language above is that it would affirmatively permit plaintiff to *initiate* conversations about the settlement with third parties — a right that was never contemplated in the June 29 settlement recited into the record, which allowed only that Plaintiff could truthfully respond, under his own name, to questions from other schools, state bars, and character & fitness examiners.

On August 7, 2026, Loyola's counsel therefore declined that expansion and by email (set forth in its entirety below) proposed conforming language consistent with the recited terms.

> Hi William,
>
> I have finally heard back from Loyola about the edits you proposed to the Agreement. As I expected, they are not willing to accept the edit on page 5 that you drafted, concerning Mr. Chronicles' ability to mention the notation removal from the transcript. The proposed edits to p. 4 are fine.

> They also cannot cut the settlement check until we receive a W-9 from him; please forward that at your earliest opportunity. And we will need his written notice of withdrawal; I know you want to keep that in your possession until the Agreement is signed, which is fine, but we do need to know it has been drafted and you have it.
>
> How about this for a revision in place of your proposed edit:
>
>> Notwithstanding the confidentiality provision below, if Plaintiff is directly asked in writing by a bar admissions authority, law school, or character & fitness examiner whether this matter was resolved, Plaintiff may respond using the following language only: "This matter was resolved and is subject to a confidential Settlement Agreement." Under no circumstances shall Plaintiff ever disclose a range or amount of settlement, or any information regarding any change to his transcript or other academic records, or any term of this Agreement.
>
> This is an important point for us, because your edit created an affirmative right for him that we did not agree to, and gave him the right to do this whether or not he was responding to an actual inquiry about it. So, no go to that.
>
> I look forward to hearing from you. Please call if you'd like to discuss. Have a nice weekend!
>
> Julie

*See* 8/7/2026 email between counsel, **Exhibit 6**.

After receiving that email (Exhibit 6), Plaintiff terminated his court-appointed counsel, William Most, who telephoned Loyola's counsel to inform her. Then on August 20, 2026, Plaintiff *pro se* filed a motion to reopen the case for appointment of new counsel to challenge the enforceability of the settlement (R. Doc. 79), and on September 3, 2026, he filed a Motion for Status Conference (R. Doc. 80). Loyola did not oppose either motion. There has been no ruling or hearing on the Motions. Loyola now brings this Motion to enforce the settlement the parties reached and placed on the record.

## II. ARGUMENT

### A. This Court has jurisdiction and inherent authority to enforce the settlement.

A federal district court has the power to summarily enforce a settlement agreement reached in a case pending before it. *See, Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). The Fifth Circuit has long recognized a district court's "inherent power to recognize, encourage, and when necessary enforce" parties' settlement agreements. *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020). A settlement entered into in a pending case cannot be repudiated by either party and will be summarily enforced as an exercise of that inherent power. *See Bell v. Schexnayder,* 36 F.3d 447 (5th Cir. 1994), *citing CIA Anon Venezolana de Navegacion v. Harris*, 374 F.32d 33, 35-36 (5th Cir. 1967). Where the parties' substantive rights derive from federal law — as they do here, given Plaintiff's Title IX, ADA, and civil-rights claims — federal law governs the enforceability and validity of the settlement. *See Mid-S. Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984). ("Questions regarding the enforceability or validity of such agreements are determined by federal law—at least where the substantive rights and liabilities of the parties derive from federal law.").

The Court's jurisdiction is secure. In *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994), the Supreme Court held that ancillary jurisdiction to enforce a dismissal-producing settlement exists where the district court either incorporates the settlement terms into its dismissal order or expressly "retain[s] jurisdiction" over the settlement — in which event a breach of the agreement would be a violation of the order. *Id.* The Fifth Circuit applies the same rule, holding that a district court's jurisdiction to enforce a settlement rests on its inherent authority to enforce settlement agreements and its express retention of jurisdiction. *See Wise v. Wilkie,* 955 F.3d 430, 432 (5th Cir. 2020) (Holding that the district court has inherent power to enforce

settlement agreements where “the district court's dismissal order expressly retained “jurisdiction for enforcement, if necessary, of the terms and conditions of the Settlement Agreement and Release entered into by the parties.”).

Here, the Court’s July 2, 2026 Order of Dismissal retained jurisdiction for all purposes and made the matter subject to reopening for good cause to enforce settlement if not perfected within sixty (60) days. Magistrate Judge North likewise stated on July 1, 2026 that he was retaining jurisdiction to ensure the parties signed the written agreement. Both the jurisdictional predicate of *Kokkonen* and the inherent-power basis recognized in *Mid-S. Towing Co.* and *Wise* are therefore satisfied.

**B. A valid and binding settlement was formed and satisfies the form requirements of Louisiana Civil Code articles 3071 and 3072.**

Federal courts sitting in Louisiana apply Louisiana substantive law to determine whether a valid compromise was formed. Under the Louisiana Civil Code article 3071, “[a] compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.” A compromise has two essential elements: (1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences. *See Bernadas v. Edet*, 2024-0418 (La. App. 4 Cir. 2/26/25), 409 So. 3d 1026, 1031. Both are present here: the parties intended to end this lawsuit, and each made concessions as set forth in the settlement terms that were read into the record on July 1, 2026.

As to form, Louisiana civil Code article 3072 provides that “[a] compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.” These are alternative methods; a compromise recited in open court and capable of transcription is fully enforceable. *See Trahan v. Coca Cola*

*Bottling Co. United*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1104. The material terms of this settlement were recited in open court on July 1, 2026 as captured in the Court's Minute Entry (R. Doc. 76), which states that "the material terms of the settlement agreement were memorialized on the record." The open-court requirement of article 3072 is thus satisfied.

**C. Plaintiff's refusal to sign the written agreement does not defeat enforcement.**

Louisiana law is clear that "[a] compromise agreement recited on the record in open court will be treated as though it is a written contract, conferring upon each party the right of judicial enforcement of performance of the agreement even though the substance may later be written in a more convenient form." *See Bernadas v. Edet*, 2024-0418 (La. App. 4 Cir. 2/26/25), 409 So. 3d 1026, 1030 *citing Peeler v. Dural*, 06-936, p.6 (La. App. 5 Cir. 4/11/07), 958 So.2d 31, 35. The Louisiana Supreme Court has held that where the terms of a compromise are recited in open court, a binding settlement was reached and a contemplated later writing does not make enforceability contingent on execution of that writing. *See Trahan v. Coca Cola Bottling Co. United*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1106. A preliminary agreement may be binding even though it refers to a future written agreement finalizing its contents; where the minds have met upon all essentials, the parties are bound although they may have agreed that they would thereafter execute a formal instrument containing the terms of their present agreement. *See NOLA Title Co., L.L.C. v. Archon Info. Sys., LLC*, 2022-0697 (La. App. 4 Cir. 4/13/23), 360 So. 3d 166, 183.

Louisiana courts routinely compel a party who reneges to perform. In *Tolbert v. Hyatt Mgmt.*, 496 So. 2d 1054 (La. Ct. App. 1986), after the terms of a settlement were recited in open court, the plaintiff refused to sign the written release; the court affirmed a judgment ordering plaintiff to execute the written settlement because the essential terms of the settlement were fully disclosed to plaintiff in open court. Id. at 1056 ("Under these circumstances, we find no error in

the trial court's judgment ordering plaintiff to execute the written settlement.”). The same result is warranted here.

Plaintiff cannot manufacture a dispute by pointing to the parties’ post-recitation exchange of drafts. Louisiana applies an *objective* meeting-of-the-minds standard; the mere lack of a subjective ‘meeting of the minds’ does not prevent formation of an enforceable contract, and a party’s subjective belief that a formal written agreement would incorporate some additional term does not prevent the formation of a valid and an enforceable compromise. *See NOLA Title Co., L.L.C. v. Archon Info. Sys., LLC*, 2022-0697 (La. App. 4 Cir. 4/13/23), 360 So. 3d 166, 180.

Plaintiff’s proposed revision — language that would have affirmatively allowed him to *initiate* conversations about the settlement — sought a right that was not ever contemplated in the settlement reached on June 29, 2026 (read into the record on July 1, 2026), which permitted only that Plaintiff could truthfully respond, under his own name, to questions from other schools, state bars, and character & fitness examiners. Loyola is entitled to enforce the compromise actually recited and to decline a term outside it. *See Trahan v. Coca Cola Bottling Co. United*, 2004-0100 (La. 3/2/05), 894 So. 2d 1096, 1106 (“Defendant claims that a final and enforceable compromise could not have been reached on October 21, 2002, because there was no meeting of the minds. According to defendant, there was no meeting of the minds because it had always considered the execution of a receipt and release by claimant a condition of the settlement. We find this argument is without merit.”). Plaintiff’s attempt to add a term that was never part of the recited compromise does not unwind the binding agreement he made.

**D. Plaintiff should be compelled to sign the settlement agreement attached to this Motion to Enforce as Exhibit 1.**

The Settlement Agreement attached hereto as Exhibit 1 is the same agreement that plaintiff signed and had his legal counsel return to Loyola on July 27, 2026 except that the objectionable

language in Section IV has been replaced with the language that was proposed by Loyola's counsel (Ms. Livaudais) in her email on August 7, 2026 (See Exhibit 6). Loyola's proposed revision in Section IV comports with the settlement terms read into the record in this case because it permits the plaintiff to respond to questions he receives about the settlement as opposed to plaintiff being able to initiate conversations about the settlement.

**CONCLUSION**

For the foregoing reasons, Loyola University New Orleans respectfully requests that the Court:

(1) Grant this Motion to Enforce the Settlement Agreement;

(2) Declare that the settlement reached on June 29, 2026 and recited into the record in open court on July 1, 2026 is a valid, binding, and enforceable compromise;

(3) Order Plaintiff to execute the written settlement agreement (attached to the Motion to Enforce as Exhibit 1) conforming to the terms recited into the record, and to perform all of his obligations thereunder;

(4) Direct that, upon Plaintiff's performance, Loyola shall perform its reciprocal obligations, including removal of the suspension notation, sealing of the conduct file, and payment of $15,000.00;

(5) Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Charles D. Marshall, III*

Julie D. Livaudais (#1138)
Charles D. Marshall, III (#27564)
**CHAFFE MCCCALL, L.L.P.**
1100 Poydras Street, Suite 2300
New Orleans, Louisiana 70163
Tel.: (504) 585-7000
Facsimile: (504) 585-7075
E-Mail: livaudais@chaffe.com
marshall@chaffe.com

***Counsel for Loyola University New Orleans***

## CERTIFICATE OF SERVICE

I hereby certify that I have this 8th day of October 2026 caused a copy of the foregoing document to be electronically filed with the Clerk of Court using the CM/ECF system.

*/s/ Charles D. Marshall, III*