U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED Oct 11 2026
CAROL L. MICHEL
CLERK
cf EDSS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOSHUA CHRONICLES,

*Plaintiff*,

v.

LOYOLA UNIVERSITY NEW ORLEANS,

*Defendant*.

CIVIL ACTION NO. 2:25-cv-02211-WJC-MBN

JUDGE WILLIAM J. CRAIN

MAGISTRATE JUDGE MICHAEL B. NORTH

**PLAINTIFF'S MOTION FOR LEAVE, IF REQUIRED, TO FILE PROTECTIVE OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (REC. DOC. 81), OPPOSITION TO ENFORCEMENT OF DISPUTED WRITTEN TERMS, AND ALTERNATIVE REQUEST FOR EVIDENTIARY HEARING AND CLARIFICATION OF REPRESENTATION STATUS**

## INTRODUCTION

Plaintiff Joshua Chronicles respectfully submits this protective opposition to Defendant Loyola University New Orleans's Motion to Enforce Settlement Agreement (Rec. Doc. 81). To the extent leave is required because Plaintiff's former appointed counsel may remain counsel of record, Plaintiff requests leave to file this opposition. Plaintiff also requests prompt clarification of representation status and, alternatively, an evidentiary hearing before the Court orders Plaintiff to execute a written agreement containing materially disputed provisions.

Plaintiff does not ask the Court to disregard the July 1, 2026 settlement proceeding or to hold that the absence of a final written agreement automatically defeats enforcement. Rather, Plaintiff asks the Court to distinguish the terms actually agreed upon from materially different language later proposed for inclusion in the written agreement. Defendant's own exhibits document a specific dispute over the proposed confidentiality and disclosure restrictions. The

Court should determine the scope of the settlement actually reached before ordering Plaintiff to execute Defendant's proposed agreement in its present form.

## I. PROCEDURAL POSTURE AND REQUEST FOR PROTECTIVE LEAVE

Defendant filed its Motion to Enforce Settlement Agreement on October 8, 2026, invoking the Court's inherent authority to enforce settlements reached in cases pending before it and the Court's asserted retention of jurisdiction. (Rec. Doc. 81 at 1.) Defendant noticed the motion for October 28, 2026, at 9:30 a.m. (Rec. Doc. 81-8.)

The prior record indicates that Plaintiff filed a motion seeking reopening and appointment of pro bono counsel (Rec. Doc. 79) and a motion for a status conference (Rec. Doc. 80), and that former counsel William Most filed a motion to withdraw (Rec. Doc. 78). Former counsel later filed a request for expedited action on withdrawal or alternative relief concerning the submission date (Rec. Doc. 82). Plaintiff understands that a request for relief is not an order granting relief. Unless the docket reflects otherwise, Plaintiff does not assume that any pending motion automatically stays the briefing schedule or changes the October 28 hearing date.

Plaintiff requests protective leave only to ensure that his position on the merits can be considered without treating unresolved representation status as a waiver of substantive objections. If the Court determines that Plaintiff may not file this opposition without leave while counsel remains of record, Plaintiff requests leave to file it. Alternatively, Plaintiff requests a prompt ruling or clarification concerning representation status and a reasonable, expressly ordered period for independent counsel to review and respond to the settlement-enforcement motion.

Local Civil Rule 7.5 generally requires an opposition memorandum no later than eight days before the noticed submission date, unless the Court orders otherwise. If October 28

remains the operative date and no different order applies, the ordinary deadline appears to be October 20, 2026. Plaintiff requests no assumption that this deadline has already been extended.

## II. GOVERNING LAW: ENFORCEMENT MUST BE LIMITED TO THE COMPROMISE ACTUALLY REACHED

Louisiana Civil Code article 3076 provides that a compromise settles only those differences the parties clearly intended to settle, including the necessary consequences of what they express. The scope of a compromise is therefore a distinct question from whether the parties reached a settlement in principle.

Louisiana law recognizes that a compromise reached in court may be enforceable even when the parties contemplate a later writing. *See Trahan v. Coca Cola Bottling Co. United*, 894 So. 2d 1096 (La. 2005). Plaintiff accordingly does not rely solely on the absence of a fully executed final writing. But the existence of an enforceable oral compromise does not automatically establish assent to every term in a later proposed agreement. The Court should determine whether the writing Defendant asks it to compel accurately memorializes the terms actually agreed upon.

The Court should compare the July 1 transcript with the contemporaneous correspondence and later drafts. If the record establishes that a disputed provision was agreed to or necessarily follows from the agreement, the Court may consider appropriate enforcement under governing law. If the record does not establish mutual assent to a material provision, Plaintiff respectfully submits that the Court should not compel execution of that provision merely because it appears in Defendant's proposed form.

## III. THE RECORD DOCUMENTS A MATERIAL DISPUTE OVER THE DISCLOSURE RESTRICTIONS

The July 1 transcript, as reflected in the record, includes a nondisparagement obligation and a truthful-response exception for questions from other schools, law schools, state bars, and character-and-fitness examiners. The transcript does not appear to recite the full prescribed-response restriction later proposed by Defendant.

The subsequent correspondence is material. On July 27, 2026, Plaintiff's counsel transmitted proposed redlines and a version signed by Plaintiff, explaining that the version had been signed "in case it is amenable to Loyola" and offering to discuss the revisions. (Rec. Doc. 81-6.) Defendant's August 7 response rejected the proposed language concerning Plaintiff's ability to disclose removal of the transcript notation and proposed materially narrower wording. Under that proposal, when directly asked in writing by a bar admissions authority, law school, or character-and-fitness examiner whether the matter was resolved, Plaintiff would be limited to stating: "This matter was resolved and is subject to a confidential Settlement Agreement." Defendant also proposed prohibiting disclosure of the settlement amount, any change to the transcript or academic records, and any term of the agreement. (Rec. Doc. 81-7; see also Rec. Doc. 81-1 at 9–10; Rec. Doc. 81-2.)

Defendant's own correspondence characterized Plaintiff's proposed language as creating an affirmative right "that we did not agree to." (Rec. Doc. 81-7.) This is evidence of a concrete dispute about the precise disclosure language, not proof, standing alone, that no settlement existed. The Court should consider this dispute when determining which terms were part of the compromise actually reached.

Plaintiff acknowledges that the July 27 version he signed contained confidentiality language and that the parties contemplated a written settlement agreement. Plaintiff does not

contend that no confidentiality obligation was ever discussed. The narrower issue is whether Plaintiff assented to the particular restrictions Defendant later proposed, including the prohibition on disclosing transcript changes and the limitation to a prescribed response to certain written inquiries.

Under article 3076, the Court should determine whether those restrictions were within the differences the parties clearly intended to settle. Plaintiff requests that the Court deny enforcement of the disputed language unless it determines that the language was part of the parties' enforceable agreement. Alternatively, Plaintiff requests an evidentiary hearing to resolve any material factual dispute concerning intent and assent.

## IV. THE JULY 27 SIGNED DRAFT DOES NOT, BY ITSELF, ESTABLISH ASSENT TO DEFENDANT'S DIFFERENT PROPOSED LANGUAGE

Plaintiff does not dispute that he signed the July 27 version. The context of its transmittal is nevertheless relevant: counsel stated that the version had been signed "in case it is amenable to Loyola," transmitted proposed redlines, and offered to discuss the revisions. (Rec. Doc. 81-6.) That email does not establish that Defendant accepted the July 27 language. Defendant's August 7 email expressly rejected the proposed disclosure language and offered a different provision. (Rec. Doc. 81-7.)

The Court should not treat Plaintiff's signature on one version as conclusive assent to materially different wording subsequently proposed by Defendant. Nor does Plaintiff contend that the blank signature line on Defendant's proposed agreement, standing alone, necessarily defeats an oral settlement. The question is the scope of the terms to be enforced, not a categorical rule that no settlement can exist until every party signs a final document.

The Court should determine which terms were agreed to in the July 1 proceeding and whether the disputed provisions in Defendant's later proposed agreement were part of that agreement.

## V. THE RELEASE AND OTHER PROPOSED OBLIGATIONS SHOULD BE COMPARED WITH THE TERMS RECITED IN COURT

The transcript reflects an agreement to a "full release of claims" to be included in the written agreement. Plaintiff therefore does not argue that the mere inclusion of a release is necessarily inconsistent with the settlement.

The proposed agreement, however, contains detailed language releasing known and unknown claims and extending to a broad group of persons and entities. It also contains detailed confidentiality and nondisparagement language, restrictions on future contact and campus access, and provisions governing dismissal and other performance obligations. (Rec. Doc. 81-2.) The Court should determine whether these provisions accurately implement the terms actually agreed to or materially expand them.

The same approach should govern the other provisions of the proposed agreement. Plaintiff does not ask the Court to disregard obligations recited in the transcript. He asks that any enforcement order identify the obligations actually agreed to and avoid compelling execution of additional or materially different terms without a sufficient basis in the record.

To the extent Defendant seeks to enforce a provision the Court determines was expressly agreed to or necessarily follows from the compromise, Plaintiff recognizes that the Court may consider enforcement under governing law. Plaintiff objects to treating the entire later-written instrument as an undisputed agreement without resolving the documented disagreement over its terms.

## VI. DEFENDANT'S MOTION AND THE DISMISSAL ORDER DO NOT ELIMINATE THE NEED TO DETERMINE SCOPE

Defendant's two-page motion expressly relies on the Court's inherent authority to enforce settlements and the Court's retention of jurisdiction. (Rec. Doc. 81 at 1.) Plaintiff recognizes that the language of the July 2, 2026 dismissal order must be considered in determining the Court's authority to address the present dispute. Plaintiff does not assert that the Court lacks jurisdiction merely because the final proposed agreement was not executed by both parties.

The Court's authority to address settlement enforcement and the scope of the enforceable settlement are separate questions. Even if the Court has jurisdiction to enforce the compromise, it must still determine which obligations were agreed upon. Plaintiff therefore requests that the Court consider the July 1 transcript, the dismissal order, the negotiation record, and the actual language of the proposed agreement before compelling execution of that agreement in its present form.

## VII. AN EVIDENTIARY HEARING IS APPROPRIATE IF MATERIAL FACTS ABOUT SCOPE OR ASSENT REMAIN DISPUTED

Defendant's exhibits reveal that the parties exchanged drafts and that a material provision was rejected after Plaintiff signed and counsel transmitted a proposed version. (Rec. Docs. 81-6, 81-7.) The difference concerns what Plaintiff may truthfully disclose to educational institutions and bar authorities about removal of the transcript notation. It is not merely a stylistic disagreement.

If the Court concludes that the existing record does not resolve whether the parties assented to the particular written provisions Defendant seeks to enforce, Plaintiff requests an

evidentiary hearing limited to material questions of formation, scope, and assent. Relevant evidence may include the July 1 transcript; contemporaneous term summaries and correspondence; the July 27 version and its transmittal; Defendant's August 7 rejection and replacement language; and any competent testimony needed to determine the terms of the compromise.

Plaintiff does not request a hearing merely to delay enforcement. The request is based on the documented disagreement over the precise disclosure restrictions in the written agreement Defendant asks the Court to compel Plaintiff to execute.

## VIII. REPRESENTATION STATUS SHOULD BE CLARIFIED PROMPTLY

The prior record indicates that former counsel filed a motion to withdraw and later stated that he did not intend to file anything further. Plaintiff understands that counsel's statement does not itself constitute an order granting withdrawal. If the motion to withdraw remains unresolved, Plaintiff requests that the Court clarify whether former counsel remains counsel of record and address the pending request for replacement pro bono counsel.

Plaintiff does not contend that the request for counsel automatically suspends briefing deadlines or creates an unconditional right to appointment. He requests clear procedural direction and asks the Court to consider whether a short, expressly ordered period for independent review is appropriate before requiring him to execute the disputed written agreement. This request is separate from, and does not replace, Plaintiff's opposition to enforcement on the merits.

## IX. RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant leave to file this protective opposition to the extent leave is required;

2. Deny Defendant's request to compel execution of its proposed written agreement in its present form unless the Court determines that the disputed provisions were part of the settlement actually agreed to;

3. Determine the scope of the enforceable compromise by reference to the July 1 transcript and the relevant contemporaneous negotiation record;

4. Alternatively, conduct an evidentiary hearing to resolve any material dispute concerning the parties' intent, assent, and the scope of the compromise;

5. Clarify the status of former counsel's motion to withdraw and address Plaintiff's pending request for replacement or pro bono counsel;

6. If appropriate, grant a short, expressly ordered period for independent counsel to review the settlement-enforcement dispute and respond; and

7. Grant such other relief as the Court deems just and proper.

Respectfully submitted,

Joshua Chronicles
JOSHUA CHRONICLES
Plaintiff [pro se, if authorized to proceed pro se]
6324 Chef Menteur Hwy, Apt 209
New Orleans, LA
70126
325-280-3240
joshuachroniclescase@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on October 11, 2026, I served a copy of the foregoing filing on counsel for Defendant through the Court's CM/ECF system, if authorized and applicable.

Joshua Chronicles
JOSHUA CHRONICLES