U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA
FILED Oct 17 2026
CAROL L. MICHEL
CLERK
cf EDSS

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JOSHUA CHRONICLES

VERSUS

LOYOLA UNIVERSITY NEW ORLEANS

Civil Action No. 2:25-cv-02211-WJC-MBN
JUDGE WILLIAM J. CRAIN
MAGISTRATE JUDGE MICHAEL NORTH

# PLAINTIFF'S OMNIBUS MOTION AND MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (REC. DOC. 81), WITH EXHIBIT INDEX AND PROPOSED CONFORMED AGREEMENT

## PART I — THE MOTION

Plaintiff Joshua Chronicles, appearing pro se, moves the Court as follows. This submission supplements his pending Motion for Leave and consolidated opposition (Rec. Doc. 85) and should be considered with it. Defendant's motion (Rec. Doc. 81) has been referred to Magistrate Judge North. (Rec. Doc. 86.)

### A. Relief Sought

1. Plaintiff respectfully requests leave under Local Civil Rule 7.4 to file this submission before the October 28, 2026, submission date for Rec. Doc. 81
2. An order denying Rec. Doc. 81 to the extent it seeks to compel Plaintiff to execute Loyola's proposed agreement (Rec. Doc. 81-2) as drafted.
3. An order directing the parties to execute the conformed agreement attached as Exhibit A, or another agreement the Court finds conforms to the terms recited on July 1, 2026.
4. An order that no agreement require Plaintiff to affirm that he has not filed agency complaints or restrict his communications with government agencies.
5. In the alternative, a short conference before Magistrate Judge North, by telephone or video, to resolve the language.
6. Such other relief as the Court deems just.

**B. Grounds**

1. Plaintiff accepts the settlement recited on July 1, 2026, and asks the Court to enforce it as recited. He withdraws the alternative request for an evidentiary hearing on formation made in Rec. Doc. 85.
2. Section 4.0 of Loyola's proposed agreement replaces the recited right to "truthfully respond" with a script, contradicts itself, and is one-sided.
3. Section 4.0 requires Plaintiff to affirm that he has filed no agency complaint. That statement is untrue and was never recited.
4. Other additions fall outside the recitation, and the integration clause would make them controlling.
5. Exhibit A resolves the dispute and is the kind of agreement Loyola's own prayer requests. (Rec. Doc. 81-1 at 10.)
6. Good cause supports leave. Plaintiff is pro se and his former counsel's motion to withdraw is pending (Rec. Doc. 78). The Court has not ruled on Rec. Doc. 81. The submission is narrow and rests on Loyola's own exhibits, so Loyola is not prejudiced.

## PART II — MEMORANDUM OF POINTS AND AUTHORITIES

### A. Preliminary Statement

This case settled. Plaintiff says so. He confirmed the $15,000 payment and the recited terms, and he will sign a written agreement that matches them. The question is whether Loyola may add to the recitation by order of this Court.

Loyola's proposed agreement adds in three ways that matter. First, it replaces Plaintiff's recited right to "truthfully respond" to law schools, state bars, and character and fitness examiners with one scripted sentence. Loyola keeps the right to answer the same inquiries truthfully and without a script. Second, it requires Plaintiff to affirm that he has filed no agency complaint. That is untrue, and no one recited it. Third, it adds representations and covenants, and an integration clause that would make every addition control.

Loyola asks the Court to enforce "the compromise actually recited" and to order an agreement "conforming to the terms recited into the record." (Ex. 6, Rec. Doc. 81-1 at 9–10.) Plaintiff asks for the same thing. Exhibit A does it. The Court should adopt it.

### B. Statement of Facts

#### *1. The case and the settlement conference*

Plaintiff sued Loyola on October 29, 2025. (Rec. Doc. 1.) The Court appointed pro bono counsel, William Most, on April 6, 2026. (Rec. Doc. 71.) Magistrate Judge North held a settlement conference on June 29 and July 1, 2026. (Ex. 7, Rec. Doc. 76.)

#### *2. The term lists exchanged before the recitation*

On June 29, Mr. Most sent Loyola's counsel a list of non-monetary terms. It said Plaintiff would not disparage Loyola "except that he may truthfully respond to questions from other schools, state bars, and character & fitness examiners," and that Loyola "can respond truthfully if contacted." Loyola's counsel replied: "Looks accurate." (Ex. 3, Rec. Doc. 81-4 at 3–4.) Mr. Most then wrote to the Court that Plaintiff "confirmed that we have a deal at $15,000 plus the non-monetary terms below." (Id. at 2–3.) On June 30, Loyola's counsel circulated a revised list. It kept the truthful-response exception and added that Plaintiff would respond, "under his own name." (Id. at 7.) Neither list contains a confidentiality term, a prescribed response, or a limit on the content of a truthful answer.

#### *3. The July 1 recitation*

On July 1, Loyola's counsel recited the terms and Mr. Most confirmed them. (Ex. 1, Rec. Doc. 81-5, Tr. 2:15–4:25.) Loyola's counsel said the key points "will be memorialized in a settlement agreement that, I guess, I'll write, and you can edit." (Tr. 2:25–3:3.) The recited terms included

the $15,000 payment; removal of the suspension notation; permanent restriction of Student Conduct File No. 2025018301; Plaintiff's withdrawal, no reapplication, compliance with the campus ban, and no contact with Loyola staff; dismissal with prejudice and "a full release of claims"; Loyola's limit on initiating third-party contact; and the non-disparagement term with its exception. (Tr. 3:5–4:21.)

The Court asked whether "the terms that have just been stated on the record" were the terms counsel and client understood and agreed to. Mr. Most said yes. Both counsels confirmed full authority to bind their clients. The Court then approved "the terms of the settlement agreement that's been reached today and recited into the record" and retained jurisdiction to enforce "that agreement." (Tr. 5:12–6:8.)

***4. The dismissal order***

On July 2, 2026, the Court dismissed the case without prejudice, "subject to reopening for good cause to enforce settlement if not perfected within sixty (60) days," and retained jurisdictions for all purposes. (Ex. 7, Rec. Doc. 77.)

***5. The drafting exchange***

Loyola sent its draft agreement on July 21, hoping it would be "non-controversial." (Ex. 4, Rec. Doc. 81-6 at 2.) On July 27, Mr. Most sent proposed redlines and a version Plaintiff had signed, explaining that Plaintiff signed it "in case it is amenable to Loyola." (Id. at 1.) On August 7, Loyola accepted the page 4 edits and rejected the page 5 edit. Its stated reason was that the edit "created an affirmative right for him that we did not agree to and gave him the right to do this whether or not he was responding to an actual inquiry about it." In its place Loyola proposed a script. (Ex. 5, Rec. Doc. 81-7 at 1.)

***6. Representation and procedural posture***

Plaintiff discharged Mr. Most, who moved to withdraw on August 19. (Rec. Doc. 78.) Plaintiff moved to reopen and for appointment of counsel (Rec. Doc. 79) and for a status conference (Rec. Doc. 80). Loyola moved to enforce on October 8. (Rec. Doc. 81.) Plaintiff filed Rec. Doc. 85. On October 15, the Court referred all pending motions to Magistrate Judge North. (Rec. Doc. 86.) None has been decided.

**C. Legal Framework**

Jurisdiction is not contested. A district court may enforce a settlement after dismissal when its order retains jurisdiction to do so. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381–82 (1994); *Hospitality House, Inc. v. Gilbert*, 298 F.3d 424, 430 (5th Cir. 2002). The July 2 Order cites both and retains jurisdiction "for all purposes." (Rec. Doc. 77.)

The Court enforces the compromise the parties actually made. Under Louisiana law, a compromise must be in writing or recited in open court. La. Civ. Code art. 3072. It "settles only those differences the parties clearly intended to settle, including the necessary consequences of what they express." Id. art. 3076. Each provision of a contract is read in light of the others, id. art. 2050, and doubt is resolved against the party who furnished the text, id. art. 2056. Loyola contends that federal law governs enforceability and relies on *Mid-South Towing Co. v. Har-Win*, Inc., 733 F.2d 386, 389 (5th Cir. 1984), and *Trahan v. Coca Cola Bottling Co. United*, 894 So. 2d 1096 (La. 2005). (Rec. Doc. 81-1 at 6–9.) Plaintiff submits that the result is the same under either body of law: the Court enforces the objective terms recited and does not enlarge them.

**D. Argument**

***I. The settlement is binding as recited, and Plaintiff does not contest it.***

**Issue.** Whether a binding compromise exists.

**Rule.** A compromise recited in open court and capable of transcription is enforceable. La. Civ. Code art. 3072. A later writing does not defeat it.

**Application.** The terms were recited, counsel confirmed the terms and their authority, and the Court approved them. (Ex. 1, Tr. 5:12–6:3.) Plaintiff confirmed the $15,000 and the recited terms, and he does not seek to avoid them.

**Conclusion.** The Court should enforce the settlement as recited. That makes the only live question what the recitation contains. Loyola argues that Plaintiff "refuses to sign." He does not. He will sign Exhibit A today. He declines to sign terms beyond the recitation.

***II. Section 4.0 replaces the recited right to "truthfully respond" with a script.***

**Issue.** Whether the Court should compel Plaintiff to sign Section 4.0, which limits his answers to law schools, state bars, and character and fitness examiners to one sentence.

**Rule.** A compromise covers what the parties clearly intended to settle and its necessary consequences. La. Civ. Code art. 3076. Provisions are read together, art. 2050, and doubt runs against the drafter, art. 2056. Loyola agrees that it "is entitled to enforce the compromise actually recited and to decline a term outside it." (Ex. 6, Rec. Doc. 81-1 at 9.) The same rule protects Plaintiff.

**Application.** The recited term is plain:

> "Mr. Chronicles agrees not to disparage Loyola University or its current or former employees/staff under his own name or anonymously or under the identity of someone else except that he may truthfully respond to questions from other schools, other law schools, state bars, and character and fitness examiners."

> *(Ex. 1, Tr. 4:12–17.) Loyola's right is reciprocal: it "can respond truthfully in such reporting and also if contacted by a third party." (Tr. 4:2–5.)*

Exhibit 1 does not carry that term forward. Section 4.0 limits Plaintiff to "the following language only": "This matter was resolved and is subject to a confidential Settlement Agreement." It allows even that only if Plaintiff is "directly asked in writing" "whether this matter was resolved." And it forbids "any information regarding any change to his transcript or other academic records." (Ex. 2, Rec. Doc. 81-2 at 5.) The recitation contains none of these limits.

The provision also contradicts itself. The same bullet first says Plaintiff "may truthfully respond, under his own name only, to questions from other colleges and universities, schools, state bars, and character & fitness examiners." It then says he may respond "using the following language only." (Id.) A later bullet requires him to answer "any inquiry concerning the status of the Lawsuit" with only "all disputes have been amicably resolved." (Id. at 6.) A clause that permits and forbids truthful answers cannot override the recited right.

It is also one-sided. Section 3.0 lets Loyola "respond truthfully to inquiries from third parties, including universities, bar admission offices and character and fitness examiners about Plaintiff," with no script. (Id. at 4.) The recitation gave both sides truthful-response rights. Exhibit 1 scripts one.

Loyola's own explanation does not reach this far. Its August 7 email objected that Plaintiff's edit gave him a right to speak "whether or not he was responding to an actual inquiry." (Ex. 5, Rec. Doc. 81-7 at 1.) Plaintiff does not seek that right. He will not volunteer information, and he will not disclose the amount. Those limits answer Loyola's concern. They do not support a script, a written-inquiry condition, or a ban on truthfully answering a direct question about his academic record.

Loyola drafted Exhibit 1. (Ex. 1, Tr. 3:1–3 ("I guess, I'll write").) Any doubt runs against it. La. Civ. Code art. 2056.

**Counterargument.** Loyola will say the recitation contemplated a written agreement with customary terms. (Tr. 2:25–3:3.) A writing may add the mechanics of performance. It may not take back a right the recitation gave. A ban on truthful answers is the opposite of a "necessary consequence" of an express right to answer truthfully. La. Civ. Code art. 3076.

**Conclusion.** The Court should decline to compel Section 4.0 as drafted and should adopt the response paragraph in Exhibit A §4.

### *III. The agency affirmation and covenant were never recited and cannot truthfully be signed.*

**Issue.** Whether the Court should compel Plaintiff to affirm that he "has not filed, and will not file, any suit, administrative charge or complaint against Loyola," and to make no claims "in any forum." (Ex. 2, Rec. Doc. 81-2 at 5–6.)

**Rule.** A compromise reaches only what the parties clearly intended to settle. La. Civ. Code art. 3076.

**Application.** The recitation provides for dismissal with prejudice and "a full release of claims." (Ex. 1, Tr. 3:24–4:1.) It says nothing about Plaintiff's filing history or about agency communications. It recognizes that Loyola will keep reporting to government agencies. (Tr. 4:2–11.) Plaintiff's sworn declaration states that complaints naming Loyola remain open with the U.S. Department of Veterans Affairs and the U.S. Department of Education. (Ex. 8, Rec. Doc. 85.) He cannot truthfully affirm that he has filed none. No term of the recitation requires him to, and the Court should not order a party to sign a statement he knows to be untrue. [Counsel to confirm any authority limiting contractual restraints on communications with government agencies.]

**Counterargument.** Loyola will point out that the July 27 draft Plaintiff signed contained the same affirmation. (Ex. 4, Rec. Doc. 81-6 at 17.) It did, and the statement is not accurate. That draft was an offer, and Loyola did not accept it. In any event the recitation, not a draft, defines the agreement. Loyola also may say the covenant only implements the release. A release of claims does not require a false statement about filing history or a bar on speaking to agencies. Exhibit A gives Loyola the recited release and adds a clause preserving Plaintiff's agency communications. (Ex. A §§5–6.)

**Conclusion.** The Court should not compel the affirmation or the covenant and should adopt Exhibit A §6.

### *IV. The remaining additions fall outside the recitation.*

Exhibit 1 also adds: the representations in Sections 7.0 through 7.2, including a certification regarding disability or impairment; a tax indemnity in Section 2.0, where the recitation says only that Plaintiff will "assume responsibility for any tax obligations" (Tr. 4:18–21); an expanded list of released persons in Section 1.2; a definition of "disparage" that reaches true statements, which sits uneasily with the recited right to respond truthfully; and a confidentiality clause. (Ex. 2, Rec. Doc. 81-2 at 3, 5–7.) The Court need not resolve each one. Exhibit A implements every recited term without them. Plaintiff does not seek to disclose the settlement amount, and Exhibit A §4 says so.

*V. The July 27 signature is not assent to Loyola's replacement text.*

**Issue.** Whether Plaintiff's signature on a July 27 draft binds him to the different language Loyola proposed on August 7.

**Rule.** Assent requires acceptance of the terms proposed. The recited terms, not any draft, define the compromise. La. Civ. Code arts. 3072, 3076.

**Application.** Mr. Most sent the signed version "in case it is amenable to Loyola." (Ex. 4 at 1.) Loyola rejected the page 5 language Plaintiff proposed and answered with its own. (Ex. 5 at 1.) Loyola's brief concedes that Exhibit 1 differs from the version Plaintiff signed because Loyola replaced that language. (Ex. 6, Rec. Doc. 81-1 at 9–10.) Plaintiff has never signed Section 4.0 as it appears in Exhibit 1.

**Conclusion.** The signature shows Plaintiff was willing to settle. It does not show he agreed to Loyola's script.

*VI. The integration clause makes conformity necessary before execution is compelled.*

Section 9.0 of Exhibit 1 states that the agreement is the parties' entire agreement on the matters it addresses. (Ex. 2, Rec. Doc. 81-2 at 7.) If Plaintiff were ordered to sign Exhibit 1, its restrictive text would govern in place of the recited right to respond truthfully. The language must be conformed first. Exhibit A provides that the recited terms control over any conflicting provision. (Ex. A §8.)

*VII. Exhibit A conforms to the recitation and should be adopted.*

**Issue.** What written agreement the Court should order.

**Application.** Exhibit A restates each recited term in the words used on the record. It adds only the mechanics needed to perform payment timing, a Form W-9, written withdrawal, a release that includes Loyola's insurers, and a covenant not to sue on released claims. It adopts a response paragraph that permits truthful answers to any inquiry, bars volunteering, and bars disclosure of the amount. It preserves Plaintiff's right to communicate with government agencies. It provides that the recited terms control. Loyola's own prayer asks for an agreement "conforming to the terms recited into the record." (Ex. 6 at 10.) Magistrate Judge North presided over the settlement and can resolve any remaining wording quickly, by telephone or video if the Court prefers.

**Conclusion.** The Court should order execution of Exhibit A or an agreement it finds conforms to the recitation.

**E. Conclusion**

Plaintiff asks the Court to enforce the settlement as recited. He asks the Court to deny Rec. Doc. 81 to the extent it seeks to compel Exhibit 1 as drafted, to order execution of the conformed

agreement attached as Exhibit A, and to order that no agreement require him to affirm that he has filed no agency complaint or restrict his communications with government agencies.

Dated: October 17, 2026
Respectfully submitted,

Joshua Chronicles
Plaintiff, Pro Se
6324 Chef Menteur Hwy, Apt 209
New Orleans, LA 70126
joshuachroniclescase@gmail.com
(325) 280-3240

## CERTIFICATE OF SERVICE

I certify that on the date stated above I submitted the foregoing, with Exhibit A, to the Court through its electronic submission process, and that counsel of record for Defendant will receive notice of the filing through the Court's electronic notification system.

Joshua Chronicles