UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSHUA CHRONICLES** | **CIVIL ACTION NO. 25-2211** |
| **VERSUS** | **SECTION "C"(5)** |
| **LOYOLA UNIVERSITY NEW ORLEANS** | JUDGE WILLIAM J. CRAIN |
| | MAGISTRATE JUDGE MICHAEL B. NORTH |

**PLAINTIFF'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT (REC. DOC. 81)**

NOW INTO COURT comes Plaintiff, Joshua Chronicles, who submits this supplemental memorandum to Rec. Doc. 84.

## I. INTRODUCTION

Plaintiff does not repudiate the settlement placed on the record on July 1, 2026. He asks the Court to enforce it exactly as recited, with nothing added and nothing narrowed. Defendant's proposed written agreement contains terms that were never recited, and the clearest example is Section 4.0, which governs what Plaintiff may say when other schools, state bars, and character-and-fitness examiners ask him about this matter. The recited settlement answered that question in one word: *truthfully*. Defendant's proposed Section 4.0 replaces that standard with a mandatory sentence, limits it to one type of written question, and forbids any other disclosure "under no circumstances." That is not a conforming term. Defendant itself asks the Court to compel a written agreement "conforming to the terms recited into the record" (Rec. Doc. 81-1 at 10), and Plaintiff asks for the same thing.

## II. THE RECITED TERMS

1. On July 1, 2026, Magistrate Judge North took the parties' settlement on the record. (Rec. Doc. 81-5 at 2:5-8.) Defendant's counsel stated that the terms would be "memorialized in a settlement agreement" that she would write and Plaintiff's counsel "can edit." (*Id.* at 2:25-3:3.)

2. As to Loyola's communications, the recited term is: Loyola "agrees not to initiate contact with third parties about Mr. Chronicles except as required by law, regulation, or preexisting contract, but can respond truthfully in such reporting and also if contacted by a third party." (*Id.* at 4:2-5.)

3. As to Plaintiff's communications, the recited term is: Plaintiff "agrees not to disparage Loyola University or its current or former employees/staff under his own name or anonymously or under the identity of someone else except that he may truthfully respond to questions from other schools, other law schools, state bars, and character and fitness examiners." (*Id.* at 4:12-17.)

4. The recited terms do not prescribe the wording of any response, do not limit responses to written questions, and do not bar Plaintiff from answering truthfully about the status of his transcript. (*See generally id.*)

5. The Court asked whether the stated terms were "the terms that you and your client understand them and agree to them today," and counsel answered yes. (*Id.* at 5:12-15.) The Court approved "the terms of the settlement agreement that's been reached today and recited into the record," incorporated "[t]hose terms" by reference into the order of dismissal, and retained jurisdiction to enforce "that agreement." (*Id.* at 5:25-6:8.)

6. Defendant's memorandum describes the agreed terms the same way. It states that Plaintiff "would not disparage the University or its staff, except that he could truthfully respond, under his own name, to questions from other schools, state bars, and character & fitness

examiners." (Rec. Doc. 81-1 at 2.) It describes the same terms again as "agreed" and "recited" (*id.* at 1, 9) and asks the Court to compel an agreement "conforming to the terms recited into the record." (*Id.* at 10.)

7. The terms were also exchanged in writing before the hearing. On June 29, 2026, Plaintiff's counsel emailed Defendant's counsel and Judge North the non-monetary terms, including that Plaintiff "may truthfully respond to questions from other schools, state bars, and character & fitness examiners," and added that "[t]hese terms would be set out in a settlement agreement to be signed by the parties." (Rec. Doc. 81-3 at 2.) Defendant's counsel replied: "Looks accurate." (*Id.* at 1.) On June 30, Defendant's counsel circulated the terms for the hearing, with a truthful-response term for each side. (Rec. Doc. 81-4 at 7.) None of these writings mentions confidentiality, a prescribed response, or a limit to written questions. (*See generally* Rec. Docs. 81-3, 81-4.)

## III. THE WRITTEN DRAFTS AND WHAT THEY ADD TO THE RECITED TERMS

8. On July 21, 2026, Defendant circulated a draft agreement. On July 27, 2026, Plaintiff's counsel returned proposed redlines and a copy signed by Plaintiff, explaining that he "had Mr. Chronicles sign this version in case it is amenable to Loyola." (Rec. Doc. 81-6 at 1.) Plaintiff does not dispute that he signed that version or that it contained the confidentiality language that appears in Defendant's draft.

9. Plaintiff's proposed edit to the disclosure provision appears in the bullet that begins "understands that he may truthfully respond, under his own name only, to questions from" other schools, state bars, and examiners. It states: "Notwithstanding the confidentiality provision below, Plaintiff may truthfully disclose to bar examiners, law schools, and character & fitness examiners that the matter was resolved through this Agreement and that the transcript notation

was removed, without disclosing the settlement amount or any other specific terms of this Agreement." (Rec. Doc. 81-6 at 17.)

10. On August 7, 2026, Defendant's counsel stated that the proposed edits to page 4 were "fine," and rejected only the edit on page 5. Her stated reason was that the edit "created an affirmative right for him that we did not agree to and gave him the right to do this whether or not he was responding to an actual inquiry about it." (Rec. Doc. 81-7 at 1; *see also* Rec. Doc. 81-1 at 4-5.) Defendant's memorandum repeats the objection: the edit would "affirmatively permit plaintiff to initiate conversations." (Rec. Doc. 81-1 at 4.)

11. In place of Plaintiff's edit, Defendant proposed, and now asks the Court to compel, the following: "if Plaintiff is directly asked in writing by a bar admissions authority, law school, or character & fitness examiner whether this matter was resolved, Plaintiff may respond using the following language only: 'This matter was resolved and is subject to a confidential Settlement Agreement.' Under no circumstances shall Plaintiff ever disclose a range or amount of settlement, or any information regarding any change to his transcript or other academic records, or any term of this Agreement." (Rec. Doc. 81-2 at 5.)

12. Plaintiff did not sign the version containing Defendant's replacement language. Defendant's memorandum acknowledges that Exhibit 1 is the July 27 document "except that the objectionable language" was replaced. (Rec. Doc. 81-1 at 9-10.) Exhibit 1 also contains terms that appear nowhere in the transcript, including: a covenant to keep the terms confidential and to answer inquiries about the lawsuit only that "all disputes have been amicably resolved" (Rec. Doc. 81-2 at 6); an indemnity for tax claims (*Id.* at 3); a covenant not to file any suit, administrative charge, or complaint against Loyola or any of its employees (*Id.* at 5); a definition of "disparage" that applies "whether or not he believes the statement(s) to be true" (*Id.* at 5); an

extension of the release to students and all affiliated persons (*Id.* at 3); and certifications that Plaintiff believes the settlement is "fair and reasonable," is under no disability or impairment that affected his decision, and was not influenced by undue influence or threats from Loyola (*Id.* at 6-7).

## IV. ARGUMENT

### A. The standard is the recited compromise, and Defendant agrees.

A compromise recited in open court is enforceable. La. Civ. Code art. 3072. It "settles only those differences that the parties clearly intended to settle, including the necessary consequences of what they express." La. Civ. Code art. 3076. Where the words are clear and explicit and lead to no absurd consequences, they are not interpreted further. La. Civ. Code art. 2046. Defendant argues that it "is entitled to enforce the compromise actually recited and to decline a term outside it." (Rec. Doc. 81-1 at 9.) The same rule applies to Defendant. Defendant's own exhibits confirm that the pre-hearing writings contained no confidentiality term, no script, and no limit to written questions. (Rec. Doc. 81-3 at 2; Rec. Doc. 81-4 at 7.) Plaintiff does not dispute that an in-court recital can be enforceable (*see* Rec. Doc. 81-1 at 7-8); the question is what was recited. In *Wise v. Wilkie*, 955 F.3d 430 (5th Cir. 2020), a settlement placed on the record before a magistrate judge was construed by reference to the terms stated at the hearing. Neither party may add to what was recited.

### B. Defendant's replacement for Section 4.0 departs from the recited term in five ways.

*First*, the transcript lets Plaintiff respond truthfully to "questions" from four categories of inquirer. (Rec. Doc. 81-5 at 4:15-17.) Defendant's text limits Plaintiff to written questions that ask whether the matter "was resolved." (Rec. Doc. 81-2 at 5.) An oral question, or one about status or transcript, falls outside it.

*Second*, the transcript sets a standard (truthfulness) and prescribes no wording. Defendant's text requires one sentence, "language only." (*Id.*)

*Third*, the transcript contains no bar on truthful answers about the transcript. Defendant's text forbids "any information regarding any change to his transcript or other academic records" and "any term of this Agreement" "[u]nder no circumstances." (*Id.*) That would restrict a truthful answer to a question that calls for one, the very thing the recited term protects.

*Fourth*, Defendant's mandatory sentence states that the matter "is subject to a confidential Settlement Agreement." No confidentiality term was recited in open court (Rec. Doc. 81-5 at 3:5-4:21), and none appears in the pre-hearing writings Defendant attached (Rec. Docs. 81-3, 81-4). Whether confidentiality governs, and to what extent, is the issue the Court is being asked to decide; a compelled sentence that assumes the answer is not a conforming term.

*Fifth*, the recited deal is symmetrical. Loyola "can respond truthfully" when contacted. (*Id.* at 4:2-5.) Defendant's own draft preserves that right, allowing Loyola to "respond truthfully to inquiries from third parties, including universities, bar admission offices and character and fitness examiners about Plaintiff." (Rec. Doc. 81-2 at 4.) Plaintiff, answering the same examiners, would be limited to a script. The recited term gave both sides the same standard.

The Comparison Table in Appendix A sets out these differences.

**C. Defendant's stated objection does not support its replacement language.**

Defendant's stated reason for rejecting Plaintiff's edit is that it would allow Plaintiff to *initiate* conversations. (Rec. Doc. 81-7 at 1; Rec. Doc. 81-1 at 4.) The edit sits in the bullet that begins with Plaintiff's right to "truthfully respond" to questions and is naturally read as part of that right. But the objection can be removed entirely. Plaintiff accepts that the recited term permits truthful *responses* to inquiries and does not authorize him to initiate contact. The recited

language in Appendix B does exactly that. Defendant's objection, as Defendant itself framed it, is therefore resolved, and nothing in that objection justifies a mandatory script, a written-question limitation, or a blanket bar on transcript information.

**D. No written agreement was formed on any term beyond the transcript, so the recited terms alone govern.**

Plaintiff has acknowledged that the parties contemplated a written agreement and that he signed the July 27 version. (*See* Rec. Doc. 84.) That signature was on a version his counsel sent with proposed redlines "in case it is amenable to Loyola." (Rec. Doc. 81-6 at 1.) Defendant did not accept it. Defendant rejected one of Plaintiff's edits and proposed different language. (Rec. Doc. 81-7 at 1.) Louisiana law treats a response that modifies the terms of an offer as a counteroffer. La. Civ. Code art. 1943. Plaintiff did not accept Defendant's counteroffer. No written agreement on those terms was formed, and the compromise is the one recited in open court. La. Civ. Code arts. 3072, 3076.

Plaintiff will sign a written agreement that contains the recited terms, including the release, the dismissal with prejudice, and the written withdrawal the transcript expressly contemplates. (Rec. Doc. 81-5 at 3:16-20, 3:24-4:1.) He asks that it contain nothing more. Defendant's additions, listed in Appendix A, were not recited and are not "the necessary consequences of what [the parties] express." La. Civ. Code art. 3076. Defendant has told the Court that it may "decline a term outside" the recited compromise. (Rec. Doc. 81-1 at 9.) The same limit applies to Defendant's own additions.

**E. The Court can resolve the dispute on the documents; alternatively, a limited hearing is warranted.**

The relevant instruments are the transcript, the July 27 version, the August 7 email, and Defendant's Exhibit 1, all of which are in the record. The question is whether the written terms

Defendant seeks to compel conform to the transcript. That is a question of reading documents. Where opposition to enforcement challenges the agreement rather than the merits of the claim, "the parties must be allowed an evidentiary hearing on disputed issues of the validity." *Cf. Wise*, 955 F.3d 430 (quoting *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 390 (5th Cir. 1984)). Plaintiff's objection goes to what the parties agreed, not to the merits of his dismissed claims. If the Court finds the recited language ambiguous as to any term Defendant contends was agreed, Plaintiff requests a limited evidentiary hearing on that term only.

**F. The Court should rule on Plaintiff's pending requests concerning representation.**

Defendant states that it "did not oppose" Plaintiff's motions to reopen and appoint counsel (Rec. Doc. 79) and for a status conference (Rec. Doc. 80), and that neither has been ruled on. (Rec. Doc. 81-1 at 5.) Rec. Doc. 79 was filed on August 20, 2026, within the sixty days provided in Rec. Doc. 77. Plaintiff asks the Court to rule on those motions and on Rec. Docs. 78 and 82, so that his representation status is clear before the Court decides Rec. Doc. 81. Rec. Doc. 79 asks the Court to reopen the case, as Rec. Doc. 77 permits, and to appoint pro bono counsel to address whether Defendant's proposed agreement matches the recited terms. Plaintiff does not seek to litigate the dismissed claims and does not repudiate the settlement as recited on July 1, 2026.

## V. CONCLUSION AND PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court:

1. Enforce the settlement as recited on July 1, 2026 (Rec. Doc. 81-5), and only as recited;

2. Deny Rec. Doc. 81 to the extent it asks the Court to compel Plaintiff to execute Exhibit 1, or any term not recited on July 1, 2026, including Section 4.0 as drafted by Defendant

on August 7, 2026, and the confidentiality, indemnity, no-complaint, definitional, release-scope, and certification provisions identified in Appendix A;

3. Order that any written agreement contain the recited terms as stated in Appendix B and Rec. Doc. 81-5 at 3:5-4:21, together with the release, dismissal with prejudice, and written withdrawal the transcript contemplates;

4. Order the parties to execute that agreement within seven (7) days of the Court's order, with the parties' reciprocal obligations to follow;

5. In the alternative, set a limited evidentiary hearing on any term Defendant contends was agreed but not recited;

6. Rule on Rec. Docs. 78, 79, 80, and 82, and clarify Plaintiff's representation status; and

7. Grant all other relief the Court finds just.

Respectfully submitted,

Joshua Chronicles, Plaintiff
Appearing on his own behalf pending the Court's ruling on Rec. Doc. 78
6324 Chef Menteur Hwy, Apt 209
New Orleans, LA
70126
325-280-3240
joshuachroniclescase@gmail.com

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2026, I filed the foregoing through the Court's CM/ECF system, which will send notice to all counsel of record.

Joshua Chronicles